UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Genora Jones, as the Personal Representative
of the Estate of Clayton Jones, Deceased,

    Plaintiff,

v.                                                        Case No. 07-12756

Nicholas Lentine, an individual, Scott            Honorable Sean F. Cox
Byrnes, an individual, and Redford Township,
a Michigan Municipal Corporation,

    Defendants.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Genora Jones, as the Personal Representative of the Estate of Clayton Jones, deceased ("Plaintiff" or "the Estate") filed this § 1983 action against two police officers and Redford Township alleging deprivation of the Fourteenth Amendment substantive due process rights of the deceased following a high-speed police pursuit of a vehicle that ultimately struck the deceased's vehicle, killing him. The matter is currently before the Court on Defendants' Motion for Summary Judgment. The parties have fully briefed the issues and the Court heard oral argument on June 12, 2008. For the reasons that follow, the Court shall GRANT the motion because the Defendant officers are entitled to qualified immunity.

BACKGROUND

This action arises out a high-speed police pursuit that ended tragically when the fleeing vehicle struck another vehicle, resulting in the death of Plaintiff's decedent, an innocent

1

bystander who was driving to work.

On January 23, 2006, at approximately 5:00 a.m., Officers Nicholas Lentine ("Lentine") and Scott Byrnes ("Byrnes") were operating a Redford Township police car and received a call from dispatch of an armed robbery at a 7-11 convenience store located at Telegraph and Joy Road in Redford Township, Michigan. (*See* Lentine Report, attached as Ex. B to Pl.'s Br.; Lentine Dep. at 11). Lentine was the driver of the vehicle at all relevant times. (Lentine Report). Dispatch advised the officers that two black male suspects were fleeing the 7-11 store on foot. (*Id*.).

Lentine and Byrnes proceeded to the area of Plymouth Road and Outer Drive and observed a Ford Taurus traveling at a high rate of speed, about 55 to 60 miles per hour. (Lentine Report; Lentine Dep. at 16). The speeding Taurus was observed by the officers within minutes of the robbery broadcast. (*Id*.). At this time, it was still dark outside. (Lentine Dep. at 16). As the officers got closer to the speeding vehicle, they observed that the vehicle was occupied by a driver and a passenger. (Lentine Dep. at 16). Because of the short time span from the robbery, the vehicle's high rate of speed and the knowledge that the route in question was a frequent escape route used in previous crimes that had occurred in the area, the officers suspected that the Taurus was involved in the robbery. (Lentine Report; Lentine Dep. at 14-16).

Lentine then advised dispatch of the suspicious vehicle, activated the police car's overhead lights, and attempted to pull the Taurus over. (Lentine Report; Lentine Dep. at 17). The vehicle failed to stop and accelerated its speed. (Lentine Dep. at 17-18). Lentine then activated the police car's siren and notified dispatch that the vehicle was fleeing. (*Id*.). The officers followed the fleeing vehicle north on Outer Drive through Schoolcraft. At this point the

vehicles were going approximately 60 to 70 miles per hour. (Lentine Dep. at 19). The vehicle failed to stop at red lights on eastbound and westbound Schoolcraft. (Lentine Dep. at 18). Lentine testified that the goal of pursuing the vehicle was to get the vehicle to stop and to apprehend the suspects. (Lentine Dep. at 20).

Past Schoolcraft, the officers observed the suspects throwing unknown items out of the car. A gun and magazine were later recovered in that area. (Lentine Report). The pursuit of the Taurus continued north onto Lahser, through a green light at Fenkell, north through a red light at McNichols, and north through a green light at Grand River. (Lentine Report).

At some point after Grand River, the driver of the Taurus turned off the headlights on that vehicle. (Lentine Report; Lentine Dep. at 25). Lentine testified that the turning off of the vehicle's headlights "elevated the circumstances a notch." (Lentine Dep. at 25). He testified that the suspects were "not showing any regard for my safety or their own. They're conducting themselves in a manner that they're just continuing their efforts to allude us." (*Id.*). Lentine also testified as follows:

> Q. Okay. Was it your concern that they were increasing the risk to bystanders who may not see their vehicle coming?
>
> A. Yes, to the point that it may have – at that rate of speed, or not at that rate, at a high rate of speed without their lights on, they were – without us being behind them there would have been likelihood that they may, you know, endanger somebody or somebody else on the road.
>
> Q. Correct. And during the period that the lights are off, do you consider terminating the chase? I mean, does that thought cross your mind, maybe I should go back?
>
> A. Yeah, I'm always evaluating the circumstances, and the conditions at that time led me to continue.

3

> Q. Okay. And what conditions were those?
>
> A. Very light traffic, no noticeable pedestrians in the area, dry roads.
>
> Q. Okay.
>
> A. Those types of things.
>
> Q. Okay. Was there other traffic, though?
>
> A. There was other traffic, it was very light.
>
> Q. And it's still dark?
>
> A. Yes.
>
> Q. Okay. And the vehicle that you're chasing has its lights off, correct?
>
> A. Yes.
>
> Q. And they're showing no signs of stopping or pulling over?
>
> A. No.

(Lentine Dep. at 25-27).

It is undisputed that the officers continued to pursue the vehicle after the suspects in the Taurus turned the vehicle's headlights off. When the pursuit reached Nine Mile and Lahser in Southfield, the Taurus ran a red light and struck a vehicle that was being driven by Plaintiff's decedent, Clayton Jones. Mr. Jones, who was on his way to work, was killed in the collision. (Lentine Report; Lentine Dep. at 35).

The pursuit of the suspects was captured on video by equipment that existed in the police car. The videotape was reduced to a compact disc and is attached to Plaintiff's Response Brief as Exhibit D. Plaintiff contends that, based on the video, the entire five-mile pursuit lasted approximately six minutes and that the suspects in the fleeing Taurus had its headlights turned

off for approximately the last two miles of the pursuit. (Pl.'s Br. at 3).

The Estate filed this action on July 2, 2007 against Defendants Lentine, Byrnes and Redford Township ("the Township")(collectively, "Defendants"). Plaintiff's complaint asserts two claims: "Violation of Plaintiff's Decedent's Substantive Due Process Rights 42 USC § 1983" (Count I), asserted against Lentine and Byrnes; and "Municipal Liability" (Count II), asserted against the Township. Plaintiff has since agreed, however, that Count II should be dismissed. (*See* Pl.'s Resp. Br. at 4 n.4). Thus, only Count I against Lentine and Byrnes remains.

## ANALYSIS

Defendants' motion first seeks summary judgment with respect to Plaintiff's §1983 claim on the basis that, even when the facts are viewed in a light most favorable to Plaintiff, Plaintiff cannot establish a deprivation of the decedent's Fourteenth Amendment Substantive Due Process Rights under the applicable standards. Defendants' motion also asserts that both officers are entitled to qualified immunity.

A.   <u>Are Defendants Lentine And Byrne Entitled To Qualified Immunity</u>?

"Under the qualified immunity doctrine, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Perez v. Oakland County*, 466 F.3d 416, 426 (6th Cir. 2006). In evaluating a qualified immunity defense, the court engages in a two-part analysis. The Court first determines whether, on the facts alleged, the official violated a constitutional or statutory right. *Id*. "If the Plaintiff does not establish the violation of a constitutional or statutory right, the inquiry ends

5

there and the official is entitled to immunity." *Id.* at 426-27.

Under the second step, the Court determines whether the right violated was "clearly established" at the time of the violation. *Id.* at *9. "The burden of showing that the right was clearly established 'rests squarely with the plaintiff.'" The relevant inquiry in determining if a right was clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. The plaintiff must show that the right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Id.* "If reasonable officers could disagree about the lawfulness of the conduct in question, immunity must be recognized." *Id.* In order to determine if the law is clearly established such that a reasonable official could determine that his actions were unlawful, the court looks principally to the law of this circuit and the Supreme Court. For Plaintiff, this means that she must show that binding authority would have alerted reasonable people in the Defendant officers' position that their conduct was unlawful.

1. On The Facts Alleged, Did The Officers Violate The Decedent's Constitutional Rights?

To succeed on a § 1983 claim, a plaintiff must establish that the defendant: 1) acted under color of state law, and 2) deprived plaintiff of his or her rights under the United States Constitution. *Meals v. City of Memphis*, 493 F.3d 720, 727 (6th Cir. 2007).

In this case, it is undisputed that Defendants Lentine and Byrne were acting under color of state law. Rather, the question is whether, during the pursuit of the suspect Taurus, the Defendants violated the constitutional rights of Plaintiff's decedent. Plaintiff alleges a deprivation of the substantive due process rights of Plaintiff's decedent, arising from the

Defendants' conduct in engaging in the high-speed police pursuit that resulted in decedent's death.

Defendants' position is quite simple. They note that under the leading United States Supreme Court case on this issue, *Sacramento v. Lewis*, 523 U.S. 833 (1998), in a high-speed automobile chase aimed at apprehending a suspected offender, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." In other words, the Supreme Court has held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight, do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *Sacramento, supra*, at 854. Defendants contend that here, even construing the undisputed facts in a light most favorable to Plaintiff, the facts do not evidence conduct which "shocks the conscience," necessary for a constitutional violation. Defendants contend there is no evidence that they acted with any intent to harm either the occupants of the suspect vehicle or Plaintiff's decedent, or that they had any motive other than a desire to do their job. Thus, they assert that their actions cannot meet the applicable standard here and there is no constitutional violation.

Plaintiff's counsel recognizes that the *Sacramento* Court adopted the heightened "shock the conscience" standard to assess liability caused to innocent bystanders during a high speed police chase. Plaintiff's brief also notes that the Sixth Circuit has observed that the Supreme Court "significantly restricted" the right to recover damages for constitutional violations stemming from police pursuits. (Pl.'s Br. at 7). Nevertheless, Plaintiff asserts that she can satisfy the high standard here because there is evidence by which the jury could infer a purpose to

7

cause harm unrelated to the legitimate object of the chase. (*Id.*). Specifically, Plaintiff contends that the fact that the Defendant officers continued the pursuit for two miles after the suspect vehicle turned off its headlights could allow the jury to infer that "the chase was continued for Defendants' self-satisfaction, personal gratification or a desire to harm the suspects borne out of Defendants' frustration with the perilous chase – and no longer related or incidental to the legitimate object of the successful apprehension of the suspects." (Pl.'s Br. at 9).

Notably, Plaintiff has not cited a single analogous case, from within or outside the Sixth Circuit, wherein the facts alleged surrounding an high-speed police pursuit were deemed sufficient to meet the shocks the conscience standard.

The Court concludes that Defendants' Motion for Summary Judgment must be granted because under the facts alleged, the Defendants' conduct simply does not meet the "shocks the conscience" standard necessary for a constitutional violation. There is no evidence in this case that could allow a reasonable jury to conclude that these officers acted with any intent to harm either the occupants of the suspect vehicle or Plaintiff's decedent, or that they had any motive other than a desire to do their job by apprehending the fleeing suspects. The Court therefore concludes that Defendants are entitled to qualified immunity because under the undisputed facts in this case there was no constitutional violation.

2. <u>Would It Have Been Clear To A Reasonable Officer In Defendants' Situation That His Conduct Was Unlawful</u>?

Assuming *arguendo* that Plaintiff could establish that, under the facts here, there could be a constitutional violation, the Court would nevertheless conclude that Defendants are entitled to qualified immunity because it would not have been clear to a reasonable officer in the

8

Defendants' situation that his conduct was unlawful.

CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

Dated: June 30, 2008          S/ Sean F. Cox
                                               Sean F. Cox
                                               United States District Court Judge

**PROOF OF SERVICE**

The undersigned certifies that the foregoing order was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 30, 2008.

                                               s/Jennifer Hernandez
                                               Case Manager to
                                               District Judge Sean F. Cox